Good morning. May it please the Court, Presiding Judge McKeown, Judge Farris, and Judge Beatty. My name is Jim Bickerton. I'm here for the Plaintiff's Appellants. There are two fundamental errors that were made in this case by the District Court. The first one is in misapplying the Rule 56 standard for summary judgment. And the second one was in construing a very important state law governing land rights. Our request today is that you reverse the summary judgment on either or both grounds. But if you decide that there was no reason on this record for judge below to reach the legal question, simply to reverse the summary judgment. And normally one would say reverse and remand for further consideration in light of the correct standard. But we respectfully submit that we submitted a, and they have, the other side has put into their supplemental record a copy of the post-judgment denial of our Rule 62.1 motion. And at the very end of that, in footnote 12, the District Court stated that actually even if it saw these new versions of the TCT, which are subject to the separate motion we've made to you for judicial notice, that even if the District Court saw those, it wouldn't accept them because it thinks that they're illegal. And that's a little shocking to us. We've explained in our reply memorandum. The District Court came up with that argument on its own. It wasn't suggested by PNC, but PNC has taken it up in the motion for judicial notice. And we have responded to that and pointed out that registrars and their assistants are absolutely entitled to make memoranda on certificates of title. And all they've done is make a memorial of the date on which they certified them. Getting to the Rule 56 standard, I'd like to talk about that because what we feel happened here is the age-old and rock-solid principle that you take the facts and you draw the reasonable inferences from them in favor of the non-moving party was not followed. The document the District Court had before him are the four transfer certificates of title, and they had an issued date. It didn't say issued and entered. It said issued. It happens that those dates were The other fact that was in the record is that there is a backlog. It seems that the judge had trouble with us proving how long it was, but it's irrelevant. It was a publicly known fact that was recited multiple times in the OMEA case, that there's a backlog between issuance and entry. So if someone presents to the District Court a document that says when it was issued, and someone that move on argues, that's also the date it was entered. And we say, wait a minute, there is a backlog that you should take judicial notice of. So they can't be the same date. Counsel, what I understood from the record is that what you relied upon before the District Court to establish the backlog was a declaration that had been submitted in another case, the OMEA case, and a bar journal article. And then you asked the District Judge in this case to establish two items, and the Court declined. Rather than putting in direct evidence in your case, the declaration in your case, you're relying on these articles from other cases, one not even from a case, from a bar journal article. Is that correct? Almost. I would say that we are limited by word counts, very short word counts in those little concise statements. We certainly were asking the Court, and we did it orally, to establish a declaration of that. There was a statement in the OMEA case that we alluded to that came from a declaration, but there's actually five or six paragraphs where the OMEA Court goes through. 1985, there was an amendment to the statute because of the backlog. In 1988, there was another one because of the backlog. In 1998, there was another one. They go and list four or five times when the legislature, in reports that the Court cited in OMEA, said there's a backlog, we have to fix it. Our point is that if you're just looking at this whole record, and 56 says, or other materials, this doesn't have to be a sworn declaration. I don't have to interfere with the ordinary functioning of a state court and the land registrar's office and hail them to come and explain their public record documents when the judge knows two things. He knows that there is a backlog. We have to accept that as a fact. I'm struggling with your characterization of what Rule 56 requires when you say it can be satisfied with other materials. You need to submit admissible evidence. Clearly, you can't just rely on allegations. You have to have admissible evidence before the Court. It may not be a declaration. It may be something else that's admissible evidence. I think the rule is a little more flexible than that. If we can show that this information would be admissible at trial, it doesn't have to always be admissible in the form presented. That is how I've read the cases. The idea is, can this be proved? Our point is that we're asking, there's a matter of public knowledge. It's not like we can pretend there's no backlog. No one in that courtroom can pretend there isn't a backlog. They could argue about how long was it on this particular date, and was it three years? That would be significant for this case. No, Your Honor, respectfully, it would not be. Because the burden on the move-on is to prove when it was entered. If you have a document that says it was issued on a certain date, and that's the date that the deeds were recorded, we know if there was a backlog of any length, even one day, we know that that couldn't be the day it was entered. So they have failed in their move-on's burden to present the date of entry. And we don't have any burden at that point to do anything more. So at that point, they've come forward with certified transfer certificates of title. You've asked the court to take judicial notice of things outside your record. The court declines. You haven't come forward with any evidence before the court ruled on transfer certificates of title. Well, I understand the court's point. I'd make two points in response. That actually the court didn't decline to take judicial notice. The court didn't address that point. It just skipped over it. And what Rule 201 says is you must take judicial notice. That's a big deal. So this is not like a throwaway. We rested on this. First of all, I'll make another point that's very important to make. These folks at PNC didn't argue what the judge decided. They weren't moving for a complete summary judgment. They conceded that we could get certain damages, but they were trying to split it up and say you can only get certain damages under this land court statute. It only allows you to get the value of your net equity. It's a very complicated argument, and we refuted it. But the point is they didn't have the nerve to ask for what the judge was doing, which is to just throw the whole thing out. But we come in, and we know land court very well. We deal with it all the time. We know there's a backlog. We say, Judge, the thing they've shown you is missing a key piece of information as to when it was entered. And we told him that, and we said you can know that they can't. He says, well, I think it's his opinions. I think issued and entered were on the same day. But what you asked the court to do is take judicial notice of the Declaration of Nehemiah case and the Bar Journal article about a backlog. I didn't see any request for judicial notice before any ruling on summary judgment with respect to modified transfer certificates of title. Those are not before the district court. That's correct. They didn't exist. They're not available. And you submitted to this court a motion for the court to take judicial notice of different transfer certificates of title. They're the same ones. Well, they're different in that there's a notation of a different date. The old ones no longer exist. There's something different about them. Yes, that is true. The date is indicated is different, and you have a declaration to explain what that means. And in that declaration, the declarant states that that started happening, I believe it was June 2018, where they were making these notations on their titles, their certificates of title. And I don't think there was a ruling from the district court until December. So at some point before the district court ruled, it seems you could have brought something to the court's attention. Respectfully, I don't read that declaration that way. I think he said that they started the project in the summer after the OMEA case came down, because the OMEA case highlights this problem, that their records don't show you when they're entered. So the office started to correct these, but it actually says that the public could not view these documents with the new dates on them until December of 2018. That's my recollection. And we established that to show why we couldn't have presented those. I was looking online the week before the hearing, and there was nothing. It hadn't changed. The land court's registrar hadn't altered what a PNC had put in. But we felt that it doesn't really matter because they're presenting something that's missing the information, and they're the move-on. And the court will be fair and follow Rule 56 and hold them to their burden, because they don't get to show when it was issued. They have to show when it was entered. There's no way, there's no person in this state who will tell you honestly that those documents, whatever they look like, were entered when they were issued. They weren't. And that is an inference that should have been drawn in our favor from the record that we presented, because when you draw inferences, you're entitled to know. You don't just operate in a vacuum. You have to think about, like, what does something really mean, and what do we all know as general knowledge? When we have the Supreme Court of the state referring to the backlog, citing that multiple times the legislature has referred to the backlog, and the judge of the land court in a learned article referring to the backlog, the district judge, if the court is going to give us the inference from this record, is going to say, well, I have to infer that issued doesn't mean entered. His ruling says issued and entered on that day. It did not happen. They can argue technicalities, but it didn't happen. And the purpose of interpreting things in our favor at the summary judgment level is to avoid this type of result. I'd like to reserve as much as I can, but I do want to say that this judge, this court, the district court, vaulted over the question that we've been talking about to a really fundamental question of law. There's a section in the statute that says nothing in this chapter shall be construed to deprive a plaintiff of a tort claim. In the whole chapter, it's black and white. Now, how you get past that, I don't know, but I respectfully submit that this panel could do what Judge Farris's panel did in the recent case of... It's escaping me, but... Hancock v. Kulana Partners. Thank you. In Hancock, the court ordered this court to certify the legal question to the white Supreme Court. This affects 45% of the land titles in this case, and Judge Watson is saying, you get no tort rights if you're wrongfully foreclosed. The backlog now is four years, but, you know, in the 60s and 70s, it was less than a week. And hopefully one day when the funds are there, the backlog will be back down to a week. And what this district court's ruling says is, if that happens, you'll have five days to bring a money damages claim against the wrongfully foreclosing entity. And the land court statute in Section 81 and 82 makes clear that if you're a land court owner, you're entitled to the same privileges and rights as a regular system owner. You shouldn't be thrown out. There is no reason to protect title by saying you can't sue a bank for damages. That doesn't... Once the title's certified, it's rock solid, wrapped in Teflon. It can't be touched. So big deal if we sue them for damages. Mr. Smith or Mr. Jones, who now has the property, it's not going to affect them. There's no reason to throw the baby of damages out with the bathwater of title. Thank you. I'll reserve the rest of my time. Good morning, Your Honors. Joanna McCallum for Appellee PNC Bank. In the summary judgment proceedings before the district court, PNC met its burden under Rule 56. We put in the only evidence that was put in the record in summary judgment, and we put in certified copies of the TCTs, which under Hawaii law are conclusive of everything contained within them. Those TCTs that we put in in summary judgment contained all of the information that was missing in the OMEA case. So the OMEA case is actually a blueprint of what could be missing to show that something is not a TCT. The TCTs we put in were signed by the assistant registrar. They described the property. They listed the encumbrances. They had a date. They indicated that the prior TCT was canceled. That's the end of the story. We met our burden. In theory, if they had put on some evidence, that would be a different story. They put in no evidence. They speculated. They mused about a backlog in general. There might be a backlog. For one thing, other cases, such as the Supreme Court's Ames case, which is the definitive case on this subject, the TCT in that case, which was binding and conclusive and barred the lawsuit, was issued, was entered on the same day that the deed was issued. So there was, in theory, a backlog at that time, too, but it didn't concern the Supreme Court sufficiently to have a different outcome in Ames. In addition, they put in... They made no effort to find out any information about whether the backlog had affected these TCTs. It's true, according to the Kabata Declaration, that the assistant registrar was just beginning to go through the process of putting these dates on the TCTs. But the process had started. The plaintiffs made no effort to go to the land court to ask them what was going on. They just speculated. There's a backlog, therefore it's impossible for this date to be the entry date. They could have gotten the same type of declaration that they ultimately got. That's the reason that the district court later on denied their motion to reconsider. They had just done nothing to put together any evidence in this case. PNC met its burden. There was nothing for the district court to look at. On the other side of the equation, the materials of which they sought judicial notice during the summary judgment proceeding, they didn't even really ask for judicial notice. It was, as Judge Batey noted, it wasn't even the declaration that was cited in Amaya. It was a sentence from the Amaya opinion talking about the declaration and then a land court article. That's not evidence. Again, it was speculation because they made no effort to tie it into this case and they easily could have. They also were seeking judicial notice for the truth of the contents because they wanted to prove that the issue date on the TCTs that we had put in was not the entry date. We submit under Rule 56 everything was in order. We met our burden. They did not meet their burden. Again, the TCTs are conclusive. As for the judicial notice, Rule 201 says the court must take judicial notice but only when the requirements for taking judicial notice are met. Again, judicial notice cannot be taken for the truth which is definitely the reason they sought judicial notice here. Judicial notice cannot be taken of facts that are subject to a reasonable dispute. Here, we had no opportunity at any time to depose the witness, to subpoena any evidence, to try to find out exactly the nature of this backlog problem. It was purely speculation. As to 501-212 we did discuss this in our briefs. That's a statute that basically addresses a contract claim that can exist in certain circumstances that didn't arise here and they never claimed that contract claim. There's a sentence in that statute that says that the contract claim will not take away any tort action but it presumes that a tort action otherwise exists which it does not in this case. We did not go over their request for judicial notice on appeal but again those more recent TCTs are irrelevant here. The judgment had been entered the district court had exercised its discretion not to consider the new materials because of their complete lack of diligence and as for the damages claims... ...go back to this issued and entry dichotomy so we know what the issue dates are here What is the legal basis for determining that's the entry date? Well, there is a definition in the statutes which the Amaya court did not acknowledge in 501- 20 I believe it is entry just means I actually don't have the definition right here but it's just to note the purpose of a document so it's not entirely clear I think what entry means in Amaya and in Ames and in other cases the words issuance and entry with respect to a TCT with respect to a completed TCT are used interchangeably even in the Amaya opinion where the ultimate decision in that case is that there was no TCT even though there had been a number issued it still refers to the issuance of a TCT in a context that makes it clear that issuance and entry are the same thing Again, there may have been a backlog but until the Amaya decision came out a TCT that looked exactly like the ones that PNC put in in the summary judgment proceedings with an issuance date up in the corner was treated as the entered binding and conclusive TCT so all of the cases prior to the end of 2018 that barred a challenge because of the TCT had been entered it has the same type of TCT with an issue date. There was no dispute over what the date was. This whole thing about how there's a different set of dates many years later many years after the dates printed on the TCT came up at the end of 2018 and as to how that affects it that's kind of an unexplored issue because it just came up after the judgment in this case. Do you think that this is an issue the Hawaii Supreme Court should answer? I don't think it's necessary to answer it in this case because the judgment was entered and the case is conclusive based on as I said a TCT that was complete and self-contained on its face and is consistent with all the cases decided up to that point. If there is an issue like that it's arisen since this case and it's a question for another case. So I just wanted to mention briefly on the question of whether 501.118 also applies to claims for damages it does and there's at least four reasons for that one is a lawsuit like this one even though they say they're only seeking damages it requires the same allegations and the same proof as a case that is trying to get the property back the basic allegation is something was wrongful in the foreclosure process and it's invalid in fact in their complaint they repeatedly alleged that the foreclosure was invalid was of no effect they seek at least on behalf of the to undo the foreclosure completely so it's the same action it's the same allegations and proof no matter what the remedy you're seeking as the district court noted the remedy of damages is frequently referred to as an alternative or equivalent to getting the title back that means you have to prove the same thing you just get a different remedy at the end of the day so the same time bar should apply the same legislative policy of finality and certainty of a TCT it is exactly the same effect if you're just talking about a damages claim even if the subsequent owner still is going to have title without any interference from a challenger there's still uncertainty there's still a core claim that the transaction that led to them getting the title was illegal or wrongful a third the legislature in the plain language of the preserved out damages claims just made explicit in the statute that the only thing that's barred by 501.118 is a claim to actually get title back they didn't say that, they just said a claim to impeach the title is barred impeach just means discredit, call into question the validity of, it's not a comment on what kind of remedy and the legislature could have been explicit that damages claims were preserved and presumably the legislature would have been aware that by imposing that time bar that was going to have an effect on many mortgages whose claims to regain title would be barred if they had intended that they would have an alternative damages remedy they could have said so I gather that he's arguing though a fairly narrow point he's saying it could not have been entered on the date it was issued that they couldn't be the same date and the record reflects only one of the two dates so there's a problem and he's arguing we're not asking for the property back, we want to go against the bank for acting and they didn't have a now isn't that pretty much what he's trying to say to us and don't you want to tell us why that's not correct? Yes I do I think there's two parts to that the first part is the assertion that the TCT could not have been entered and issued on the same day at least as of the time of the summary judgment hearing, summary judgment proceedings and decision in that case that was purely speculation they offered they asked the court sort of asked the court to take judicial notice of the fact that in general there is a backlog, that says nothing about whether there was a backlog that impacted these TCTs in this case and they could easily could have gotten evidence during the summary judgment proceedings to cast real doubt on that, they could have gotten the equivalent of the same declaration from the assistant registrar that they ultimately did get which created that issue but that was not an evidentiary issue in the record or before the district court at the time of summary judgment So based on these other cases and these articles is there no actual way to determine whether a given TCT was entered on a particular day? I believe as we sit here today as of the end of 2018 there apparently is a way we don't know much about it because this was never explored by anyone through discovery because it didn't come up until judgment was entered but in that declaration of the assistant registrar that's with their motion for judicial notice which for separate reasons we don't believe that's a proper subject of judicial notice in this court either but if you look at that and you take it as true it suggests that the assistant registrar's office today has some way to look at an older TCT and determine that it actually was entered on some other date other than the one stamped in the front we don't know anything about that that it just wasn't developed in this case and it came up after judgment so we don't know the answer to that as to the damages they are saying yes they are asking at least on appeal to just go after the bank for damages that's not what they asked for in their complaint their complaint implicates the return of title for at least some absent class members but regardless as I was saying a claim for damages based on the fundamental assumption that the foreclosure was just as much an impeachment of the foreclosure as a claim trying to get the title back so it's a distinction without difference at least in this case so if there are no further questions we will submit thank you we definitely take issue with this idea that we were speculating about a backlog when you are citing a length and legislative enactments that recite it we are not speculating that there is a backlog what they are saying is well you are speculating about whether it affected these particular instruments but they had four instruments they are trying to tell the district court that all four of them somehow didn't get caught up in the backlog every single one of them has an issued date and they said every single one of these four instruments got certified the day it was issued somehow they are not consecutive or sequential they are at different times different months somehow for just these four the registrar dropped what they were doing and working on the backlog and jumped in and certified these on the day you know what Mr. Biggerton when the court granted summary judgment it had to look at the record as it existed at that time and the record showed what it showed there is no doubt about it it showed what it showed and nobody raised an objection to entering a summary judgment based on the record your honor that is true so to decide with you we have to speculate that on that date that could not have been this is a semantic could not have been done the same date you know let's say that somebody is behind two years but on one day it might be the same thing at one day they caught up and one day they entered issued the same day then they slipped behind again at some point it is possible but nobody raised it so the court didn't have to consider possibilities it looked at a record and so on that record nobody is objecting and we are looking at the entered date the issued date could be the same to decide for you don't we have to speculate that it could not have happened I respectfully submit that you don't the word I would use is make an inference and there is a difference between speculation and inference and that's what we are asking we are saying the court knowing that there are four of these what's the coincidence of that are you going to give them the benefit of that that's a crazy coincidence that there are four with no backlog it's looking at a case and deciding what did the record show it didn't show a date of entry so counsel I think it's maybe a little different or I'm seeing it a little differently we wouldn't have to make an inference that the TCTs were not entered on the same day they were issued because the complaints were filed years later we are not talking about a week or a few days here so what we would have to do then is without any record evidence decide that they weren't entered before the time that your original first amendment complaint was filed we don't know how much time that is no we don't have to decide that on this record we actually do know now because of the judicial notice request and we have the you don't need that the district court didn't have that information and we don't have it either because we haven't granted your motion for judicial notice yet we may or may not but we haven't done that so what I feel like you are doing is you are arguing for us to supplement the record on appeal we don't need to do that to win and the reason is it's about the burden of proof and drawing inferences from the record that you have there are two points here they have a burden as a move on to establish the entry date they present a document that is inherently ambiguous because it says issued and it doesn't say entry they say judge it was entered the same day and we are like how could that be possible there is a backlog once you accept the existence of a backlog of any length they have failed in their burden to prove when it was entered that's what they have to prove as move on when it's remanded we can argue how long the backlog was and whether these dates were before or after we filed suit but we did file suit before the dates that are shown in the ones that you have so it would be an empty exercise but I'll be happy to go back and let them try again with a clear record but on the record this judge had we weren't speculating we are saying they haven't shown you this document is ambiguous intrinsically you have to draw the inference in our favor we have your argument in mind thank you very much argued is submitted
judges: Farris, McKeown, Bade